# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

TROY MICHAEL DEFRANK,

    Plaintiff,

v.

Civil Action 2:16-cv-467
Judge Michael H. Watson
Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

## REPORT AND RECCOMENDATION

Plaintiff, Troy Michael DeFrank, brings this action under 42 U.C.S. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record. (ECF No. 8.) For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.    BACKGROUND

Plaintiff filed his application for benefits on April 9, 2012, alleging that he had been disabled since May 9, 2008 due to a herniated and bulging disk, obesity, diabetes, asthma, spina bifida, degenerative disc disease, and degenerative arthritis. Plaintiff's applications were denied initially on September 10, 2012 and upon reconsideration on January 25, 2013. Plaintiff sought a

hearing before an administrative law judge. On June 20, 2014, Plaintiff appeared in Wheeling, West Virginia, for a video hearing with Administrative Law Judge Terrence Hugar ("ALJ"), however the hearing was postponed in order for Plaintiff to obtain representation. On September 17, 2014, the Plaintiff appeared and testified via video hearing before the ALJ. Larry Ostrowski, Ph. D., a vocational expert, also appeared and testified. At the hearing Plaintiff amended his alleged onset date to February 21, 2012. On September 30, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12–23.) The ALJ's decision became the final Agency decision on March 9, 2016 when the Appeals Council denied review. Plaintiff then timely commenced the instant action.

As noted in the ALJ's decision, Plaintiff has filed multiple prior applications for disability benefits, most recently in July 2010. (R. at 12.) His July 2010 application was denied initially, on reconsideration, and after a hearing before an ALJ. On February 21, 2012, ALJ Karl Alexander found Plaintiff not disabled because he retained the residual functional capacity ("RFC") to perform a range of light work as defined by the regulations, and the vocational expert testified that an individual with Plaintiff's vocational profile could perform work existing in significant numbers in the national economy. (R. at 12, 86–103.) As such, the unadjudicated time period at issue in the instant matter is from February 22, 2012, the day after ALJ Alexander's decision, through September 20, 2014, the date of ALJ Hugar's decision.

In his Statement of Errors, Plaintiff raises two issues. Plaintiff asserts that ALJ Hugar erred by failing to provide particular weight to consultative examiner Dr. Sella and failing to explain why he implicitly rejected portions of Dr. Sella's opinion. (Plaintiff's Statement of Errors ("SOE"), ECF No. 12.) Additionally, Plaintiff asserts that ALJ Hugar erred by failing to

2

consider and weigh the functional opinion from treating physical Dr. Parulkar when determining whether Dr. Parulkar's non-functional opinions were deserving of more weight.

In her Memorandum in Opposition, the Commissioner counters that the ALJ sufficiently articulated his findings with respect to the medical opinions and that, even if the ALJ had erred, such errors were harmless. (Defendant's Memorandum in Opposition ("Def.'s Opp.") at 5.)

### I. HEARING TESTIMONY

#### A. Plaintiff's Testimony

Plaintiff testified that he currently lives with his mother and stepfather, he has a driver's license and will occasionally drive to the grocery store. (R. at 36–37.) He also helps his mother out with housework. (R. at 37.) He testified that his last job, in heavy construction, ended in May 2008. According to Plaintiff, he had to stop working at his construction job because he was receiving treatment for his back and his job could not accommodate the restrictions set forth by his Doctor. (R. at 35.) He testified that beyond his back issues, he also suffers from high blood pressure, diabetes, and asthma, as well as a significant amount of arthritis in his knees and the loss of 80 percent of the ligaments in his left knee. (R. at 39–40.) His knee locks up and sometimes gives out on him. (R. at 38.) He has had injections to treat the pain in his knees. (*Id.*) He also suffers from arthritis in his elbows. (R. at 42.) He takes 800 milligrams of Ibuprofen daily for his back pain. (R. at 44.)

#### B. Vocational Expert Testimony

The vocational expert ("VE") testified that with the limitations in the RFC, Plaintiff could perform work as a sales attendant, marker, and mail clerk. (R. at 46.) With the addition of a sit/stand option every 30 minutes, the VE testified that Plaintiff could perform work as a mail clerk, storage facility rental clerk, and officer helper. (R. at 46–47.) Even if further limited to

simple work with no production pace and occasional interaction with others, Plaintiff could still perform work as a mail clerk, storage facility rental clerk, or office helper. (R. at 47–48.) If limited to sedentary work with the other postural and mental limitations from previous hypotheticals, the VE testified that Plaintiff would be able to perform work as a surveillance system monitor, document preparer, and ampoule sealer. (R. at 48–50.)

## II. MEDICAL EVIDENCE[1]

### A. Dr. Sella

On August 9, 2012, consultative examiner Gabriel Sella, M.D., observed that Plaintiff walked with assistance of a cane in his right hand, had decreased breathing volume and percussion, a positive Romberg test, one-third full squatting ability, an inability to hop on the left leg, and severe bilateral trigger points in the L5-S1 and left piriformis areas. (R. at 393–95.) Plaintiff reported that he could walk thirty feet before becoming short of breath and reported paresthesia in his leg. (*Id.*) Dr. Sella opined that Plaintiff could sit without restriction, stand and walk five to ten minutes at one time several times per day, and lift and carry moderate weight. (R. at 395.)

### B. Dr. Khalid Darr

State agency consultative examiner Dr. Khalid Darr, M.D., examined Plaintiff on July 17, 2014. (R. at 451–65.) Dr. Darr observed that Plaintiff "ambulates with a normal gait" and "appears stable at station and comfortable in the supine and sitting positions." (R. at 452.) Based upon the evaluation, Dr. Darr determined that "claimant is able to carry and lift 30 to 40 pounds frequently and lift and carry between 41 and 60 pounds occasionally." (R. at 455.)

---

[1] The Court limits its analysis of the medical evidence to the issues raised in Plaintiff's Statement of Errors, namely evidence related to the weight the ALJ gave to the opinions of Doctors Sella and Parulkar.

4

## C. Dr. Parulkar

Plaintiff visited Dr. Parulkar on March 23, 2010 and May 18, 2010. During the May 18, 2010 visit, Plaintiff complained of pain in his back and Dr. Parulkar ordered an MRI of the lumbar spine. (R. at 95.) Per Dr. Parulkar's order, Plaintiff underwent an MRI of the lumbar spine on May 28, 2010. (R. at 414.) The MRI revealed various degrees of spinal canal and foraminal stenosis from L1 through S1; mild levoscoliosis centered at L4; mild desiccation of the L1-2 and L3 through S1 discs without significant loss of disc height; mild diffuse disc bulging at L1-2 and L2-3 with ventral flattening of the thecal sac at both levels and mild spinal canal narrowing without foraminal compromise; diffuse disc bulging at L3-4 with ventral flattening of the thecal sac resulting in mild spinal canal narrowing at this level and significant bilateral foraminal narrowing and diffuse disc bulging at L5-S1 with ventral flattening of the thecal sac resulting in mild spinal canal stenosis with significant bilateral foraminal stenosis. (*Id.*)

On October 12, 2012, Dr. Parulkar indicated that Plaintiff suffered from severe back pain due to disc space narrowing and foraminal encroachment at multiple levels of lumbar spine and opined that Plaintiff was "not able to work because of this." (R. at 408.) Imaging of the lumbar spine from December 5, 2012 showed grade I anterolisthesis of L5 S1, narrowing of L5-S1 disc space, and small anterior osteophytes throughout the spine. (R. at 412.) On March 24, 2014, Plaintiff reported pain in his back and his left knee. (R. at 436.) Dr. Parulkar observed tenderness to palpation of the lumbar spine and 1+ bilateral edema and tenderness in the left knee. She administered a dexamethasone injection and Toradol injection. (R. at 437.) X-ray of the left knee on April 28, 2014 showed mild degenerative changes in the lateral compartment. (R. at 444.) On April 30, 2014, Plaintiff reported more pain as well as swelling in his legs. (R. at 438.) Dr. Parulkar observed cervical tenderness. (R. at 439.)

On July 21, 2014, Plaintiff reported pain in his right elbow to Dr. Parulkar, who observed tenderness to palpation over the lumbosacral spine, paraspinal muscle spasm bilaterally, and positive straight leg raising bilaterally. (R. at 501–02.) At that visit, Dr. Parulkar indicated that she was going to get Plaintiff handicapped parking permission at his request. (R. at 501.)

**D. Dr. Thomas Ranieri**

Dr. Thomas Ranieri of Allied Pain Treatment Center evaluated Plaintiff on November 1, 2011 for complaints of low back pain. According to the ALJ's decision, due to the low back pain, Plaintiff reported that he could barely walk when he first got up in the morning. After testing, Dr. Ranieri diagnosed Plaintiff with lumbar disc disease, lumbar radiculities at S1 and exogenous obesity. (R. at 96.) Dr. Ranieri gave Plaintiff an epidural steroid injection on November 28, 2011 and prescribed Percocet 10 for him. (R. at 97.)

## III. ADMINISTRATIVE DECISION

On September 30, 2014, ALJ Hugar issued his decision. (R. at 12–23.) At step one of the sequential evaluation process,[2] ALJ Hugar found that Plaintiff had not engaged in

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

substantially gainful activity since February 22, 2012, the first day after the most recent prior ALJ decision was issued. (R. at 15.) ALJ Hugar found that Plaintiff had the severe impairments of degenerative disc disease/degenerative arthritis of the lumbar spine, morbid obesity, diabetes mellitus, and asthma. ALJ Hugar found that Plaintiff's other alleged impairments including hypertension, bilateral knee pain, and right elbow pain are non-severe because those impairments "have been responsive to treatment, cause no more than minimally vocationally relevant limitations, have not lasted or are not expected to last at a "severe" level for a continuous period of 12 months or expected to result in death, or have not been properly diagnosed by an acceptable medical source." (R. at 15.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) At step four of the sequential process, ALJ Hugar set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in the 20 CFR 404.156(b) and 416.967(b) except the work with: occasional postural, except no crawling or climbing ladders, ropes or scaffolds; no concentrated exposure to fumes, odors, dust, gases, and poor ventilation; and no exposure to extreme heat, extreme cold, wetness, humidity, vibration, and hazards such as unprotected heights and moving mechanical parts.

(R. at 17.) In reaching this determination, the ALJ found that "no objective evidence consistent with or supportive of finding any impairment, including degenerative changes of the lumbar spine, obesity, diabetes, and asthma, intractable in nature and preclusive of any and all forms of work activity." (R. at 18.)

---

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In assessing Plaintiff's RFC, ALJ Hugar recognized the previous ALJ's decision. He acknowledged that "prior to the period of at issue" an MRI revealed degenerative changes throughout the lumbar spine, including herniation and bulging, as well as narrowing and stenosis; "however, changes were no more than mild to moderate in nature." (R. at 18.) He further explained that the imaging did not reveal any compression fractures, spinal cord compromise, spinal arachnoiditis, or pseudoclaudication. (*Id.*) Further, despite those findings, the prior ALJ determined that Plaintiff was capable of performing a range of light exertional work. (*Id.*) Moreover, in assessing the relevant period, ALJ Hugar found that "no progression or worsening of lumbar spine degenerative changes were established" and that "a whole body scan as recent as August 2014 was unremarkable for abnormality." (*Id.*) During the relevant time period, Plaintiff did not seek out or require "more than conservative pharmacological management and maintenance. . ." (*Id.*)

ALJ Hugar accorded the State agency medical consultants' and consultative examiners "the greatest weight" "to the extent that [they] . . . showed that claimant's ability to perform work requirements was not grossly restricted, and to the extent that each opinion was consistent with the majority of the objective findings in the medical evidence." (R. at 20.) This includes consideration of "the August assessment of State agency consultative examiner Gabriel Sella, M.D., finding the claimant capable of lifting/carrying moderate weights, sitting without restriction, and standing/walking five to ten minutes at one time several times per day." (R. at 19.)

On the other hand, the ALJ accorded Dr. Parulkar's opinions "less than great weight." (R. at 20.) While he acknowledged Dr. Parulkar as Plaintiff's treating physician, he found important that Dr. Parulkar is not a specialist or expert, and the statement of disability she

provided did not constitute a function-by-function assessment or medical opinion. (*Id.*) He further reasoned that

> such a general assessment, as well as the acquiescence to the claimant's request for a parking sticker, are inconsistent with and unsupported by Dr. Parulkar's own visitation records, which were repeatedly absent of any remarkable objective abnormality, including no abnormality in ambulation, as well as the treatment pursued by Dr. Parulkar (i.e., conservative medical monitoring and maintenance), which was not the type of medical treatment one would reasonably expect for a totally disabled individual, especially given that Dr. Parulkar contended said totally disabling impairment(s) had been ongoing for half a decade.

(*Id.*) The ALJ therefore found it reasonable to believe that Dr. Parulkar relied upon Plaintiff's subjective assertions. (*Id.*) Relying on the VE's testimony, the ALJ found that Plaintiff was not disabled under the Social Security Act.

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

In his Statement of Errors, Plaintiff argues first that the ALJ failed to provide particular weight to Dr. Sella's opinion and failed to explain why he implicitly rejected portions of her opinion. Second, Plaintiff contends that the ALJ failed to weigh the functional opinion from Dr. Parulkar when determining whether Dr. Parulkar's non-functional opinions were deserving of more weight. (*See* SOE.)  In essence then, Plaintiff posits a single contention of error, namely that the ALJ failed to properly weigh the medical opinions in the record in formulating the RFC. Nevertheless, the Undersigned reviews Plaintiff's Statement of Errors in turn.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v.*

10

*Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

In considering a claimant's case and assessing the RFC, the ALJ must consider all medical opinions that he or she receives. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir.

12

2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision); *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.").

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)

**A. Opinions of Dr. Sella**

Plaintiff first argues that ALJ Hugar did not provide particular weight to Dr. Sella's opinion and implicitly rejected portions of his opinion without explanation. Specifically, Plaintiff takes issue with the ALJ's RFC formulation because Dr. Sella opined that Plaintiff can only stand or walk five to ten minutes at once several times per day, but the ALJ did not include a standing or walking limitation in the RFC. The Commissioner counters that ALJ Hugar sufficiently analyzed the non-examining source opinion of Dr. Sella and that his RFC was supported by substantial evidence. (Def.'s Opp. at 9.)

The Undersigned finds that ALJ Hugar sufficiently explained the weight he accorded Dr. Sella and that the RFC formulation without a standing or walking limitation was supported by substantial evidence. An ALJ "must explain in the decision the weight given the opinions of a State Agency medical . . . consultant[,]" 20 C.F.R. § 404.2527(e)(2)(ii), but need not give "an

13

exhaustive factor-by-factor analysis" of his decision. *Cf. Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citations omitted).

Indeed, ALJ Hugar did meaningfully explain the weight he gave Dr. Sella's opinion. The ALJ wrote that he "fully considered the August 2012 assessment of State agency consultative examiner Gabriel Sella, M.D." (R. at 19.) To the extent that Dr. Sella and the other State agency medical consultants and consultative examiners "showed that claimant's ability to perform work requirements was not grossly restricted, and to the extent that each opinion was consistent with the majority of the objective findings in the medical evidence, the undersigned accorded them the greatest weight." (R. at 20.) In his decision, he explains that Dr. Sella opined that Plaintiff is capable of lifting/carrying moderate weights, sitting without restriction, and standing/walking five to ten minutes at one time several times a day. (R. at 19.) He then states that he fully considered Dr. Khalid Darr, another State agency consultative examiner's opinion, who found Plaintiff capable of "a range of medium exertional work, with the ability to sit, stand, and walk for six hours, able to perform postural and manipulative movements occasionally to frequently, and able to be exposed to environmental factors on an occasional to frequent basis." (R. at 19–20.) While Dr. Sella opined that Plaintiff could only walk or stand for five to ten minutes at a time, Dr. Darr found that Plaintiff could sit or stand and walk for six hours at a time. The ALJ explicitly found that Plaintiff retained the ability to perform light work "as defined in in 20 C.F.R. §§ 404.1567(b) and 416.967(b)." (R. at 17.) 20 C.F.R. §§ 404.1567(b) and 416.967(b) define light work as involving "a good deal of walking or standing," as consistent with Dr. Darr's walking and standing limitations for Plaintiff. Moreover, the ALJ explained that he accorded the greatest weight to the State agency examiners' opinions where "claimant's ability

14

to perform work requirements was not grossly restricted." The ALJ properly weighed Dr. Sella's opinion in this regard.

Plaintiff also challenges the ALJ's RFC determinations insofar as he implicitly rejected Dr. Sella's postural restrictions regarding a sit/stand option at Plaintiff's will, which prior-ALJ Alexander imposed in his RFC in 2012. Yet, ALJ Hugar considered the record as a whole in his determination of the RFC. Importantly, as the ALJ noted, under the *Drummond* ruling and in accordance with AR 98-4(6), in determining whether Plaintiff was disabled during the unadjudicated period, he was required to adopt the previous ALJ's findings from the February 12, 2012 decision. *Drummond v. Comm'r of Soc, Sec.*, 126 F.3d 837 (6th Cir. 1997); *see also Holt v. Astrue,* No. 1:10–cv–439, 2011 WL 3861891, at *7 (S.D. Ohio July 6, 2011) ("[B]ecause Plaintiff failed to present any new and/or material evidence in the record that showed Plaintiff's condition had worsened since [the] previous unfavorable decision, [the ALJ] acted properly by following *Drummond* and . . . adopting said decision.") (Report and Recommendation later adopted). Upon review of the record, ALJ Hugar notes that "no objective evidence consistent with or supportive of finding impairment," or increased impairment during the applicable time period existed to support the postural limitations in Dr. Sella's opinions. Substantial evidence supports this conclusion. For instance, in making that determination he reviewed medical evidence indicating that any changes throughout Plaintiff's lumbar spine were no more than mild to moderate in nature, that Plaintiff evidenced no motor loss and no evidence showed the Plaintiff had complete inability to ambulate effectively and that the previous ALJ had determined that with those impairments, Plaintiff was capable of performing a range of light exertional work. (R. at 18.)   ALJ Hugar's RFC at issue here, is reflective of ALJ Alexander's previous RFC, which also did not include a time limitations on standing or sitting. (R. at 93.) Moreover, a

whole body scan from August 2014 "was unremarkable for abnormality" and the Plaintiff did not seek out or receive more than the conservative pharmacological management and maintenance during the period at issue. (*Id.*); *see Gault v. Comm'r of Soc. Sec.*, 535 F. App'x 495, 496 (6th Cir. 2013) (holding that the ALJ properly evaluated the physician's opinion where the degree of the opined limitations was inconsistent with the claimant's benign clinical examinations, conservative course of treatment, and daily activities) ALJ Hugar further noted Plaintiff's reported activities, which reflect an ability to engage in light activity including helping his mom with laundry and dinner, and mowing as recently as August 2014. The ALJ properly noted that these activities of daily living undermined any argument that Plaintiff required additional restrictive limitations in his RFC.

Because the Undersigned finds that the ALJ did not err in his consideration of Dr. Sella's opinion and in not including limitations in the RFC formulation for standing and walking supported by substantial evidence, it is **RECCOMENDED** that Plaintiff's first contention of error be **OVERRULED.**

**B.  Dr. Parulkar's Opinion**

In his second assignment of error, Plaintiff argues that ALJ Hugar erred by failing to consider and weigh the functional opinion from treating physician Dr. Parulkar, particularly her December 16, 2011 assessment, when determining whether Dr. Parulkar's non-functional opinions were deserving of more weight. (SOE at 11.) Specifically, Plaintiff contends that the ALJ failed to acknowledge that Dr. Parulkar provided a functional assessment regarding Plaintiff's specific abilities on December 16, 2011 and as a result failed to weigh her opinion correctly. (*Id.*)

16

Defendant, on the other hand, contends that ALJ Hugar's review of Plaintiff's medical records and acknowledgment and incorporation of ALJ Alexander's 2012 decision provided sufficient consideration and justification for the weight given to Dr. Parulkar's opinion. (Def.'s Opp. at 14.)

With respect to the previously adjudicated period, ALJ Hugar noted that "diagnostic imaging revealed degenerative changes throughout the lumbar spine, including some herniation, bulging, narrowing and stenosis, however, changes were not more than mild to moderate in nature (*e.g.*, Exs. C4F and C9F)." (R. at 18.) The exhibits ALJ Hugar cited, include Dr. Parulkar's medical notes. (R. at 356–91.) Moreover, ALJ Hugar incorporated by reference ALJ Alexander's findings into his decision "to the extent that any previously stated and since uncontradicted evidentiary findings contained within the February 21, 2012 unfavorable hearing decision may continue to offer support for the conclusions reached within the present determination. . ." (R. at 13.) Although ALJ Hugar did not outright discuss Dr. Parulkar's December 2011 opinion, that opinion was discussed in the February 21, 2012 decision, which the ALJ incorporated. ALJ Alexander gave no significant weight to Dr. Parulkar's December 2011 opinion, finding that Dr. Parulkar failed to provide any objective medical signs and findings in her office notes that would support her opined limitations. (R. at 95.)

With regards to the unadjudicated period at issue, the ALJ accorded Dr. Parulkar's opinions "less than great weight." (R. at 20.) This determination too is supported by substantial evidence. As the ALJ recognized, Plaintiff's medical records, including Dr. Parulkar's medical notes, show "no progression or worsening of lumbar spine degenerative changes were established." (R. at 18.) The ALJ further bases his determination on Plaintiff's objective medical evidence, including a whole body scan from August 2014, which "was unremarkable for

17

abnormality" and on the "conservative pharmacological management and maintenance during the period at issue, with no recommended or required inpatient treatment or specialized treatment such as surgical intervention." (*Id.*) The Undersigned finds that the ALJ adequately evaluated Dr. Parulkar's opinion. *See Anderson v. Colvin*, Case No. 2:14-cv-, 2015 WL 1875359, at *10 (S.D. Ohio April 23, 2015) ("An ALJ can consider a claimant's conservative course of treatment in determining what weight to give a medical opinion.") (citation omitted).

ALJ Hugar further explained that although Dr. Parulkar is a treating and examining source, she is not a specialist and is not considered an expert familiar with the regulations and evidentiary requirements. (R. at 20.) This too was proper. *Moore v. Comm'r of Soc. Sec.*, Case No. 2:14-cv-911, 2015 WL 4399787, at * 6 (S.D. Ohio) *R&R adopted by* 2015 WL 579465 (S.D. Ohio Sept. 30, 2015) (finding the ALJ properly discounted treating source opinions where treating source was not an expert and source's limitations were inconsistent with reported activities of daily living.) Similar to ALJ Alexander's findings, the ALJ found that Dr. Parulkar "relied heavily, if not primarily, upon the claimant's subjective assertion that he could not work and, more recently, wanted a handicap sticker; assertions that are undermined by the context in which each is produced (i.e., a longstanding history of seeking secondary and contingent financial-related disability benefits and subjective based evidence to support said longstanding attempt)." (*Id.*) The Undersigned concludes that ALJ Hugar properly evaluated Dr. Parulkar's opinions. The ALJ properly concluded that Plaintiff had improved since the February 2012 decision and that a less restrictive RFC was appropriate. Plaintiff's second contention of error is therefore **OVERRULED**.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

19

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: August 3, 2017                    /s/ *Elizabeth A. Preston Deavers*
                                        ELIZABETH A. PRESTON DEAVERS
                                        UNITED STATES MAGISTRATE JUDGE